UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID J. REISCHAUER #190306,

    Plaintiff,

v.                                           Case No. 2:06-cv-149
                                                  HON. GORDON J. QUIST

GILBERT JONES,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff David J. Reischauer, an inmate currently confined at the Carson City Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Chaplain Gilbert Jones, who was employed at the Kinross Correctional Facility (KCF) during the pertinent time period. Plaintiff's complaint alleges that while he was being housed in protective custody in KCF from October 21, 2003, to January 16, 2004, Defendant denied his repeated requests for Islamic weekly Jum'an services and religious books that were contained in the Muslim Brotherhood Religious Library at KCF in direct violation of KCF policy. Defendant also removed Plaintiff from the monthly Ramadan fast list without his consent, forcing Plaintiff to either put his life at risk or to break his fast before sunset in violation of the laws of Islam. Plaintiff states that one small breakfast meal a day would not sustain him for the entire 30 days of Ramadan.

Plaintiff claims that Defendant's actions violated his rights under the First and Fourteenth Amendments to the United States Constitution, as well as his rights under the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act

(RLUIPA). Plaintiff is suing Defendant in his individual capacity and is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court are Plaintiff's and Defendant's Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56, as well as Plaintiff's Motion for Default Judgment. The parties have filed responses to these motions and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In Plaintiff's motion for summary judgment, he states that from October 21, 2003, until January 16, 2004, Plaintiff repeatedly requested that he be allowed to participate in a Muslim Service, that he be provided with Islamic books, and that he be allowed to participate in the fast of Ramadan. Plaintiff claims that he was wrongfully denied such rights by Defendant in violation of MDOC policy and rules. Plaintiff attempted to resolve the situation via the grievance process, without success. Plaintiff states that the actions of Defendant substantially burdened his right to exercise his religious beliefs and were not the least restrictive means of furthering a compelling governmental interest.

In Defendant's motion for summary judgment, he notes that Plaintiff has previously asserted the instant claims in this court in Case No. 4:04-cv-42. The case was dismissed pursuant to the total exhaustion rule on April 27, 2006. *Reischauer v. Jones, et al.*, No. 4:04-cv-42 (W.D. Mich. 2006). In the August 24, 2005, opinion partially granting summary judgment, the court found that Defendant did not violate Plaintiff's First Amendment rights by denying him the ability to attend group services in the general population. The court then found that there were genuine issues of material fact with regard to whether Defendant violated Plaintiff's right to participate in the Ramadan fast and whether he could receive books from the Muslim Brotherhood's religious library. (*See* pp. 4-11, docket #76 in 4:04-cv-42.) The court based its conclusions upon admissions made by Defendant in Case No. 4:04-cv-42. (*See* p. 11, docket #76, 4:04-cv-42.) Defendant notes that the admissions made in Case No. 4:04-cv-42 may not be relied on in the instant case because Federal Rule 36(b) provides:

> Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

*See* Fed. R. Civ. P. 36(b). Defendant states that his answers to requests for admissions in this case are attached as an exhibits and that they demonstrate that he is entitled to summary judgment on Plaintiff's Ramadan and library book claims.

Defendant states that in the course of his employment he is responsible for religious programs at KCF. Pursuant to MDOC Policy Directive 05.03.150, an inmate may designate or change his religious preference via the completion of a Religious Preference Form. Defendant claims that during the week of August 4, 2003, Defendant received a kite from Plaintiff requesting a form in order to change from Protestant to Muslim. The form was sent to Plaintiff as requested and was received back in Defendant's office on August 6, 2003. At this point, Plaintiff's religious preference was changed. On August 4, 2003, Plaintiff sent a second request for a Religious Preference Form, and it was sent to him.

Defendant states that on November 12, 2003, he received two kites from Plaintiff, in which Plaintiff requested to be provided with a copy of the Muslim Brotherhood book index from the group locker, religious services on A-3 Protective Custody, and a Ramadan fast breaking bag. On November 13, 2003, Defendant sent Plaintiff a note explaining that he had been placed on Ramadan as of that day, but that there was no such thing as "fast breaking bags" for the Id-Al-Fitra to be held on November 26, 2003. Defendant told Plaintiff that other Muslim inmates were purchasing their food from the prisoner store for the Id-Al-Fitra. Plaintiff was also advised that group books do not go to the protective segregation unit, where Plaintiff was being housed, and that any books Plaintiff wished to purchase needed to be ordered from an approved vendor.

Defendant states that on November 14, 2003, Assistant Resident Unit Supervisor Harrington e-mailed Acting Assistant Deputy Warden Dodds, stating that Plaintiff wished to be removed from the Ramadan list. A copy of the email was sent to Defendant for his records, which

stated, "Prisoner Reischauer states that he no longer wants to participate in Ramadan now that he is on A-3." (*See* Defendant's Exhibit 14.) On the same date, Defendant received two kites from Plaintiff requesting the Muslim Brotherhood book index and a "fast breaking bag." (*See* Defendant's Exhibit 15 and 16.) Defendant states that he received a kite explaining what a "fast breaking bag" was and stating that it was paid for by the Muslim Brotherhood. (*See* Defendant's Exhibit 17.) On November 25, 2003, Defendant sent a letter to Plaintiff, once again explaining that the fast breaking celebration of Id-Al-Fitra for the general population prisoners would take place on November 26, 2003, and that there were no "bags" being made for Muslims at KCF. The letter further stated that the only food that would be allowed would be snacks, and that the prisoners would be bringing their own snacks to the celebration. (*See* Defendant's Exhibit 18.) Defendant offers the August 31, 2003, KCF Muslim Brotherhood's proposal for Ramadan 2003. The proposal includes the following requests:

> DATE TO BEGIN: The month of Ramadan is reported to begin this year on or about the 24-25 of October, 2003;
>
> DATE TO END: On or about the 23 or 24th of November, 2003, the fast will be completed (tentatively). In other words, the fast runs a consecutively [sic] period for 30 days from the date it begins'
>
> PARTICIPANTS: All groups i.e., "The Nation of Islam", "The Moorish Science Temple of America", and the "Muslim Brotherhood" members will be practicing this religious rite together;
>
> MEALS AND MEAL TIMES: Provide all participants with (2) hot meals for the entire 30 days of the fast, except those days where the regular meal for the day is cold. These meals must be non pork entries!!! These meals should be served in the morning about 5:15 or before "the break of dawn", and dinner should be served at about 6:30 or after sunset;
>
> MORNING PRAYER: It is requested that all participants be allowed to have congregational prayer in their units on their respective floors,

> in the dayrooms for about 10 minutes each day before the fast begins that day;
>
> NIGHT CONGREGATIONAL PRAYER: It is requested that all Muslims participating in the fast be granted permission to have congregational prayer in the Auditorium or kitchen from 8:00 pm until 8:45 pm each evening of the fast;
>
> NEW ARRIVALS: It is requested that all new arrivals at this facility who are members of any of the three religious groups previously mentioned, be immediately placed on call-out to continue their fast and prayer;
>
> SHOWERS: It is requested that all participants be allowed to take showers in the morning after count but before the morning meal;
>
> ID-AL-FITRA: Id-Al-Fitra is celebrated the day after the 30 days of fasting has been completed which is know as "the breaking of the Fast." It is requested that a special prayer service be allowed in the Auditorium in the control center annex from 8:30 until 10:30, to celebrate the anual [sic] Holy/Holiday festival. It is requested that we be allowed to purchase food and drink article from the prison store and bring them to the festival of fast breaking, to be eaten by all participants of the fast;
>
> L.O.P. OBSERVANCE: It is requested that all prisoners on L.O.P. be allowed to participate in all aspects of the fast and prayer. In addition to celebrating Id-Al-Fitra festivities.

(*See* Defendant's Exhibit 19.)

Defendant states that he informed Plaintiff that he could practice his religion individually while in protective custody and that he could order any book which complied with policy and was purchased from an approved vendor. Defendant asserts that inmates in protective segregation are physically separated from other inmates in order to protect them from being harmed. In a memorandum dated October 14, 2003, drafted by Defendant and approved by the Assistant Deputy Warden and the Deputy Warden, Defendant explained that prisoners in protective

segregation could not attend group functions, including the fast breaking celebration, but would be allowed to eat their meals at the correct times for Ramadan. (*See* Defendant's Exhibit 20.)

Plaintiff filed a grievance dated November 29, 2003, complaining that Defendant was refusing to allow Plaintiff to attend Islamic religious services, books from the religious library and a fast breaking bag. Assistant Deputy Warden Olson denied the step I grievance on December 8, 2003, stating that Plaintiff could order a book from an approved vendor, and that he could also kite Defendant if he wished to borrow a specific book from the religious library and the book would be sent to Plaintiff in protective segregation. (*See* Defendant's Exhibit 21.) Defendant states that the last kite he received from Plaintiff was in November of 2003. Defendant claims that Plaintiff's offer of two kites dated December 11 and 29 of 2003 were never date stamped, as they would have been if Defendant had actually received the kites. (*See* Defendant's Exhibit 22 and 23.)

Defendant claims that he is entitled to qualified immunity with regard to Plaintiff's Religious Land Use and Institutional Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 states:

> (a)   General Rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> > (1)   is in furtherance of a compelling governmental interest; and
> >
> > (2)   is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects

"commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b).

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Defendant states that the RLUIPA was not clearly established at the time of the events in the complaint, October 16, 2003, to January 14, 2004. Defendant asserts that "[a]s of October 16, 2003, the Sixth Circuit had not definitively ruled on the constitutionality of the RLUIPA." Defendant notes that on November 7, 2003, the Sixth Circuit held that the RLUIPA was unconstitutional in *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003).[1] Defendant contends that this situation is similar to the scenario addressed by the Sixth Circuit in *Key v. Grayson*, 17 F.3d 996 (6th Cir. 1999). In *Key*, the Sixth Circuit addressed the applicability of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) to prisoners, noting that prison officials were entitled to qualified immunity during the time that there was uncertainty on this issue. *Id.* However, as noted above, it is clear from the face of the statute that the RLUIPA applies to prisoners. Moreover, until November 7, 2003, when *Cutter* was decided by the Sixth Circuit, the RLUIPA was valid law

---

[1] On May 31, 2005, the United States Supreme Court reversed the Sixth Circuit's holding, finding that the RLUIPA, which increases the level of protection of prisoners' and other incarcerated persons' religious rights, does not violate the Establishment Clause. *Cutter v. Wilkinson*, 544 U.S. 709 (2005).

- 8 -

requiring compliance by prison officials. Therefore, a reasonable prison official in Michigan would have known that the RLUIPA applied to their conduct. Consequently, Defendant is not entitled to qualified immunity with regard to Plaintiff's RLUIPA claims which arose prior to November 7, 2003.

However, with regard to Plaintiff's RLUIPA claims which arose after November 7, 2003, Defendant could not have known that the alleged misconduct would violate valid federal law. Therefore, in the opinion of the undersigned, Defendant is entitled to qualified immunity with regard to Plaintiff's RLUIPA claims arising after November 7, 2003.

Defendant also states that he is entitled to qualified immunity on Plaintiff's Religious Freedom Restoration Act (RFRA) claim because the United States Supreme Court has concluded that the RFRA is unconstitutional. *City of Boerne v. P.F. Flores, Archbishop of San Antonio*, 521 U.S. 507, 117 S. Ct. 2157 (1997). Because the RFRA is no longer valid law, Defendant is entitled to summary judgment on Plaintiff's RFRA claim without the need to invoke qualified immunity.

Defendant states that because his actions were rationally related to a legitimate governmental interest, he is entitled to summary judgment on Plaintiff's First Amendment claims. As noted previously, Plaintiff first contends that the Defendant has violated his First Amendment right to freely practice his religion. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses);

*Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . ., and not the courts, . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

As noted in the August 24, 2005, opinion in Case No. 4:04-cv-42, Plaintiff's "classification in protective custody presented a sufficient basis for Defendant to preclude him from

attending group religious services with the general population." (*See* p. 5, docket #76 in 4:04-cv-42.) The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see Kremer v. Chemical Const. Corp., 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). However, in this case, Plaintiff claims that he wished only to be allowed to participate in services in the protective segregation unit pursuant to Policy Directive 04.05.120, which provides that protective segregation inmates shall have "[r]eligious programming, which shall include group religious services to the extent feasible." In addition, Plaintiff cites KCF Operating Procedure 05.03.150, which provides:

> Prisoners housed in protection, may request a worship service by signing up at the floor officer's desk three (3) days prior to the normal chapel date for that unit. The institutional Chaplain will contact the floor officer weekly to discover if any prisoners desire a worship service and confirm the date and time accordingly.

In response to this claim, Defendant contends that the denial of group religious meetings did not prevent Plaintiff from exercising his religious beliefs as an individual. However, Defendant has not explained why it would be unsafe for Plaintiff to attend a group worship service with the same protective custody prisoners that he continues to have contact with during other group activities. In the opinion of the undersigned, a question of fact exists on the issue of whether group religious service in the protective segregation unit is feasible.

Defendant also claims that he is entitled to summary judgment on Plaintiff's claim regarding the denial of a "fast breaking bag" because, as requested by the KCF Muslim Brotherhood

in their proposal regarding Ramadan and its observation, Muslim inmates at KCF were allowed to purchase food and drink items from the prisoner store with their own funds for the breaking of the Ramadan fast. Defendant asserts that there were no "fast breaking bags" at KCF for the Id-Al-Fitra on November 26, 2003. Defendant states that, therefore, he was under no obligation to provide Plaintiff with a fast breaking bag. In addition, Defendant claims that he is entitled to summary judgment on Plaintiff's claim that he improperly removed Plaintiff from the Ramadan list, thereby preventing Plaintiff from participating in the Ramadan fast. As noted above, Defendant states that on November 14, 2003, Assistant Resident Unit Supervisor Harrington e-mailed Acting Assistant Deputy Warden Dodds, stating that Plaintiff wished to be removed from the Ramadan list. A copy of the email was sent to Defendant for his records, which stated, "Prisoner Reischauer states that he no longer wants to participate in Ramadan now that he is on A-3." Defendant attaches a copy of this email in support of this claim. (*See* Defendant's Exhibit 14.) Plaintiff denies ever making such a request. These issues were previously addressed by the court in Case No. 4:04-cv-42, in its August 24, 2005, opinion. In that opinion, the court stated:

> Assuming that defendant relied on Harrington's e-mail and the Muslim Brotherhood's instructions, then factual questions exist such as (1) whether defendant acted reasonably in removing plaintiff from the 2003 Ramadan fast and (2) whether defendant acted reasonably in addressing plaintiff's claim for a fast-breaking bag.

The court concluded that Defendant's motion should be denied with respect to the allegation that he prevented Plaintiff from participating in the Ramadan fast. *Reischauer v. Jones, et al.*, No. 4:04-cv-42, docket #76 (W.D. Mich. 2006). The undersigned notes that the situation appears to be identical in this case. Therefore, the undersigned recommends that Defendant's motion for summary judgment be denied on Plaintiff's First Amendment claims regarding his participation in the Ramadan fast.

Defendant states that he is entitled to summary judgment on Plaintiff's First Amendment claim regarding the denial of his requests to borrow religious books from the "Muslim Brotherhood's religious library." Defendant claims that inmates can receive religious reading materials through the mail from authorized vendors or through the institutional Chaplain. Defendant contends that group books are not permitted in the Protective Segregation Unit based on security concerns. Defendant further states that he did not receive any requests for religious reading material after the December 8, 2003, Step I Grievance Response instructing Plaintiff on how to obtain religious material. In response to this assertion, Plaintiff claims that he sent Defendant kites on December 11 and 29 of 2003, requesting the KCF Muslim Brotherhood Book Index so that he could order books to read. Plaintiff claims that he never received religious books to read while in protective custody. As noted by the court in Case No. 4:04-cv-42, in its August 24, 2005, opinion, there is a factual issue of whether Defendant received Plaintiff's requests for books submitted on December 11 and 29, 2003. In that opinion, the court further notes:

> This factual issue is relevant to the question of whether a constitutional violation occurred. If defendant did not receive any requests for books in December 2003, then he did not unreasonably deprive plaintiff of religious reading material in violation of the First Amendment. The existence of these factual issues precludes the court from granting defendant's motion for summary judgment . . . with respect to plaintiff's claim that defendant denied his request for religious books.

*Reischauer v. Jones, et al.*, No. 4:04-cv-42, docket #76 (W.D. Mich. 2006).

The issue appears to be identical in the instant case. Defendant fails to assert any additional facts or evidence. Therefore, the undersigned recommends that the court deny Defendant's motion for summary judgment on Plaintiff's claims regarding the denial of religious books.

Finally, Defendant claims that he is entitled to summary judgment with regard to Plaintiff's claims pursuant to 42 U.S.C. § 1997e(e), because Plaintiff has not demonstrated a physical injury. Initially, the undersigned notes that Defendant's claim is unsupported by any decision from either the Sixth Circuit or the Supreme Court. As the Ninth Circuit held in *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998), "[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." 143 F.3d at 1213. In an unpublished opinion, the Sixth Circuit cited *Cannell* in support of it's holding that a prisoner's First Amendment claim for damages is not precluded by § 1997e(e). *See Williams v. Ollis*, 2000 WL 1434459, *2 (6th Cir. Sept. 18, 2000). The undersigned notes that if Defendant's reasoning were adopted, it would effectively eliminate all First Amendment claims for damages by prisoners. The same reasoning applies to claims under the RLUIPA. Moreover, the undersigned notes that Plaintiff has not asked for damages for any "emotional injury" as a result of Defendant's conduct. Rather, Plaintiff seeks compensatory and punitive damages for the violation itself, as well as equitable relief. Therefore, the undersigned recommends that the court deny Defendant's request for summary judgment on the basis of § 1997e(e).

Finally, the undersigned notes that because there are genuine issues of material fact with regard to Plaintiff's First Amendment claims and his RLUIPA claims which arose prior to November 7, 2003, Plaintiff is not entitled to summary judgment in this case.

In summary, in the opinion of the undersigned, Defendant is entitled to summary judgment on Plaintiff's RFRA claim as well as on his RLUIPA claims which arose after November 7, 2003. However, Defendant has failed to show that he is entitled to summary judgment with regard to Plaintiff's First Amendment or RLUIPA claims. In addition, Plaintiff has failed to show that he is entitled to summary judgment. Accordingly, it is recommended that Defendant's

Motion for Summary Judgment (docket #34) be granted, in part, and that Plaintiff's motion for summary judgment (docket #19) be denied.

In addition, the undersigned notes that Plaintiff has filed a motion for default judgment, claiming that Defendant did not respond to his motion for summary judgment in a timely manner (docket #31). However, as noted by Defendant in his response, he did respond in a timely manner by filing his motion for summary judgment on September 25, 2006 (docket #34). Therefore, the undersigned recommends that Plaintiff's motion for default judgment be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 11, 2007